1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
6  Asset Forfeiture & Recovery Section
        1100 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-0698/2426
        Facsimile: (213) 894-6269/0141
9       E-mail:   jeff.mitchell@usdoj.gov
        E-mail:   daniel.boyle2@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

6/6/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CD_____ DEPUTY

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14  UNITED STATES OF AMERICA,          No. CR  2:23-cr-00284-SPG

15            Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                       WILLIAM ERIC FULTON
16            v.

17  WILLIAM ERIC FULTON,
       aka "Eric Fulton,"
18
              Defendant.
19

20

21      1.   This constitutes the plea agreement between WILLIAM ERIC

22 FULTON, also known as "Eric Fulton," ("defendant") and the United

23 States Attorney's Office for the Central District of California (the

24 "USAO") in the investigation of defendant's conduct with respect to

25 the Nix Gambling Business, as defined below.  This agreement is

26 limited to the USAO and cannot bind any other federal, state, local,

27 or foreign prosecuting, enforcement, administrative, or regulatory

28 authorities.

1                    DEFENDANT'S OBLIGATIONS

2        2.   Defendant agrees to:

3             a.   Give up the right to indictment by a grand jury and,

4   at the earliest opportunity requested by the USAO and provided by the

5   Court, appear and plead guilty to a single-count information in the

6   form attached to this agreement as Exhibit A or a substantially

7   similar form, which charges defendant with Making False Statements,

8   in violation of 18 U.S.C. § 1001(a)(2).

9             b.   Not contest facts agreed to in this agreement.

10            c.   Abide by all agreements regarding sentencing contained

11  in this agreement.

12            d.   Appear for all court appearances, surrender as ordered

13  for service of sentence, obey all conditions of any bond, and obey

14  any other ongoing court order in this matter.

15            e.   Not commit any crime; however, offenses that would be

16  excluded for sentencing purposes under United States Sentencing

17  Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not

18  within the scope of this agreement.

19            f.   Be truthful at all times with the United States

20  Probation and Pretrial Services Office and the Court.

21            g.   Pay the applicable special assessment at or before the

22  time of sentencing unless defendant has demonstrated a lack of

23  ability to pay such assessments.

24            h.   Recommend that defendant receive, as part of his

25  sentence, a fine in an amount no less than $673,290 and not argue, or

26  suggest in any way, either orally or in writing, that a lower fine

27  amount be imposed.

28

                              2

1          i.     Agree, pursuant to USSG § 1B1.2(c), that the

2   applicable offense guideline section for defendant's offense is USSG

3   § 2S1.1.

4                        THE USAO'S OBLIGATIONS

5        3.    The USAO agrees to:

6          a.    Not contest facts agreed to in this agreement.

7          b.    Abide by all agreements regarding sentencing contained

8   in this agreement.

9          c.    At the time of sentencing, provided that defendant

10  demonstrates an acceptance of responsibility for the offense up to

11  and including the time of sentencing, recommend a two-level reduction

12  in the applicable Sentencing Guidelines offense level, pursuant to

13  USSG § 3E1.1, and recommend and, if necessary, move for an additional

14  one-level reduction if available under that section.

15         d.    Except for criminal tax violations (including

16  conspiracy to commit such violations chargeable under 18 U.S.C.

17  § 371), not further criminally prosecute defendant for violations of

18  18 U.S.C. §§ 1956 or 1957 arising out of defendant's conduct

19  described in the agreed-to factual basis set forth in paragraph 9

20  below.  Defendant understands that the USAO is free to criminally

21  prosecute defendant for any other unlawful past conduct or any

22  unlawful conduct that occurs after the date of this agreement.

23  Defendant agrees that at the time of sentencing the Court may

24  consider the uncharged conduct in determining the applicable

25  Sentencing Guidelines range, the propriety and extent of any

26  departure from that range, and the sentence to be imposed after

27  consideration of the Sentencing Guidelines and all other relevant

28  factors under 18 U.S.C. § 3553(a).

1

NATURE OF THE OFFENSE

2      4.   Defendant understands that for defendant to be guilty of

3  the crime charged in the single-count information, that is, Making

4  False Statements, in violation of Title 18, United States Code,

5  Section 1001(a)(2), the following must be true:

6          a.   Defendant made a false statement;

7          b.   The statement was made in a matter within the

8  jurisdiction of a federal law enforcement agency;

9          c.   The defendant acted willfully; that is, the defendant

10  acted deliberately and with knowledge both that the statement was

11  untrue and that his conduct was unlawful; and

12          d.   The statement was material to the activities or

13  decisions of the law enforcement agency; that is, it had a natural

14  tendency to influence, or was capable of influencing, the agency's

15  decisions or activities.

16

PENALTIES

17      5.   Defendant understands that the statutory maximum sentence

18  that the Court can impose for a violation of 18 U.S.C. § 1001(a)(2),

19  is: five years' imprisonment; a three-year period of supervised

20  release; a fine of $250,000 or twice the gross gain or gross loss

21  resulting from the offense, whichever is greatest; and a mandatory

22  special assessment of $100.

23      6.   Defendant understands that supervised release is a period

24  of time following imprisonment during which defendant will be subject

25  to various restrictions and requirements.  Defendant understands that

26  if defendant violates one or more of the conditions of any supervised

27  release imposed, defendant may be returned to prison for all or part

28  of the term of supervised release authorized by statute for the

4

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.    Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

1

FACTUAL BASIS

2      9.    Defendant admits that defendant is, in fact, guilty of the

3  offense to which defendant is agreeing to plead guilty.  Defendant

4  and the USAO agree to the statement of facts provided below and agree

5  that this statement of facts is sufficient to support a plea of

6  guilty to the charge described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 11 below but is

8  not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11      At times relevant to the Information:

12      The Department of Homeland Security, Homeland Security

13  Investigations ("HSI") and the Internal Revenue Service – Criminal

14  Investigation Division ("IRS-CI") in Los Angeles and the United

15  States Attorney's Office ("USAO") for the Central District of

16  California were conducting a federal criminal investigation into

17  federal crimes, including illegal sports gambling and money

18  laundering (the "Federal Investigation").

19      Wayne Nix was a minor league baseball player from 1995 to 2001.

20  Sometime after 2001, Nix began operating an illegal bookmaking

21  business in the Los Angeles area that accepted and paid off bets from

22  bettors in California and elsewhere in the United States based on the

23  outcomes of sporting events at agreed-upon odds (the "Nix Gambling

24  Business").  Through contacts he had developed during his own career

25  in professional sports, Nix created a client list of current and

26  former professional athletes, and others.  Nix used agents, including

27  Agents 1 and 2, to place and accept bets from others for the Nix

28  Gambling Business, thus expanding the business.  As part of the Nix

6

1    Gambling Business, Nix and his agents used a website called Sand
2    Island Sports to create accounts through which wagers would be placed
3    and tracked.

4         Defendant was the founder and senior partner at a financial
5    services company ("The Company").  The Company provided bookkeeping,
6    accounting, and tax preparation services to its clients.  Those
7    clients included Nix, Agent 1, and Agent 2.  Specifically, The
8    Company provided bookkeeping and accounting services to Nix and Agent
9    1, in which it paid their bills and transferred money between
10   accounts.  Defendant also provided tax preparation services to Agent
11   2.  Nix had a personal and business account with Wells Fargo Bank.
12   Nix used the Wells Fargo business account, which was in the name
13   "Nixy Enterprises," for the gambling business.   Defendant was an
14   authorized signer for both accounts and prepared and signed checks
15   for the accounts on Nix's behalf.

16        The Nixy Enterprises bank account lacked activity consistent
17   with a legitimate business.  There were no typical business expenses
18   or income.  Most of the bank activity came in the form of deposits
19   and personal expenses such as car payments, travel, and food.  Nix's
20   gambling clients typically deposited cash and wired money directly to
21   the Nixy Enterprises account.  Nix's clients would also send personal
22   checks and cashier's checks to Nix and/or The Company.  The "Pay to
23   the Order of" and memo lines of the personal checks were typically
24   left blank, except for a player in the National Football League who
25   wrote "investment" on the memo line of two checks.

26        Beginning no later than 2011, defendant was aware that Nix ran
27   an illegal gambling business.  Defendant nonetheless knowingly
28   laundered Nix's illicit gambling proceeds by continuing to provide

financial services to Nix and providing access to the financial system.  Specifically, defendant continued to transfer money between accounts, issue checks and wires to Nix's gambling clients who won large bets, and helped Nix obtain bank loans to facilitate the gambling business.  Between 2010 and 2020, defendant charged Nix approximately $336,645 in professional fees for his financial services.

In addition, defendant further participated in the gambling business by providing three personal loans to Nix totaling $1,250,000 to allow Nix to pay his gambling clients when Nix needed rapid access to liquid funds, which defendant agreed to provide at no cost to Nix. Specifically, On March 23, 2011, defendant wired $500,000 from his personal account at City National Bank to Nixy Enterprises.  Next, on March 6, 2018, defendant wired Nix another $250,000.  Three days later, The Company wired $250,000 from Nix's account to one of Nix's clients.  Finally, on October 10, 2019, defendant sent a $500,000 wire from his personal account directly to another of Nix's gambling clients.  Defendant knew the purpose of all three loans was to allow Nix to pay his gambling clients.

Defendant also placed personal bets with Nix.  For example, on November 12, 2016, Nix sent a text message to defendant and provided him the URL for the Sand Island Sports website.  Defendant replied, "Thanks...what's my username."  Nix replied, "R159."  That same day, defendant placed 14 bets, including three bets on a professional match of a client of The Company.

In addition, defendant also referred at least one client of The Company to Nix for the purposes of illegal gambling.  Specifically, on August 10, 2018, a client of The Company emailed defendant and

8

asked for the name of defendant's "sports bookie."  That same day,
defendant sent Nix a text message and asked, "[a]re you taking on new
clients[.] One of my celebrity clients needs your help but doubt
he'll be a significant client."  Defendant then provided Nix the name
of his celebrity client, and Nix told defendant to provide Nix's name
and phone number to the celebrity client.

On October 8, 2021, defendant was interviewed in the presence of
his attorney by HSI, IRS-CI, and the USAO regarding the Federal
Investigation.  At the beginning of the interview, a Special Agent
from IRS-CI admonished defendant that lying to federal law
enforcement agents is a crime, and defendant stated that he
understood.  During the interview, defendant made several false
statements to the agents that he knew were false and were material to
the investigation.  For example, defendant stated that he believed
Nix was a consultant or concierge and denied all knowledge of Nix's
involvement in Sports Gambling and the Sand Island Sports website.
Defendant also stated that he had no knowledge that Nix was a
bookmaker until Nix called him and told him that law enforcement
searched his home on February 7, 2020.  Defendant also repeatedly
stated that he never placed a bet with Nix.

SENTENCING FACTORS

10.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

11.  Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

Base Offense Level:      12  USSG §§ 2S1.1(a)(1); 2E3.1(a)(2);
1B1.2 (a)

Defendant and the USAO reserve the right to argue that additional
specific offense characteristics, adjustments, and departures under
the Sentencing Guidelines are appropriate.

12.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

13.  Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14.  Defendant understands that by pleading guilty, defendant
gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if
necessary, have the Court appoint counsel -- at trial.  Defendant
understands, however, that, defendant retains the right to be
represented by counsel -- and if necessary, have the Court appoint
counsel -- at every other stage of the proceeding.

10

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

15.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

16.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 10 and the criminal history category calculated by the

Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, with the exception of the Court's calculation of defendant's criminal history category; (b) the term of imprisonment imposed by the Court, except to the extent it depends on the Court's calculation of defendant's criminal history category; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

17.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

18.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 10 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

20.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

13

1

<u>BREACH OF AGREEMENT</u>

2     21.   Defendant agrees that if defendant, at any time after the

3  effective date of his agreement, knowingly violates or fails to

4  perform any of defendant's obligations under this agreement ("a

5  breach"), the USAO may declare this agreement breached.  All of

6  defendant's obligations are material, a single breach of this

7  agreement is sufficient for the USAO to declare a breach, and

8  defendant shall not be deemed to have cured a breach without the

9  express agreement of the USAO in writing.  If the USAO declares this

10 agreement breached, and the Court finds such a breach to have

11 occurred, then: (a) if defendant has previously entered a guilty plea

12 pursuant to this agreement, defendant will not be able to withdraw

13 the guilty plea, and (b) the USAO will be relieved of all its

14 obligations under this agreement.

15    22.   Following the Court's finding of a knowing breach of this

16 agreement by defendant, should the USAO choose to pursue any charge

17 that was either dismissed or not filed as a result of this agreement,

18 then:

19         a.   Defendant agrees that any applicable statute of

20 limitations is tolled between the date of defendant's signing of this

21 agreement and the filing commencing any such action.

22         b.   Defendant waives and gives up all defenses based on

23 the statute of limitations, any claim of pre-indictment delay, or any

24 speedy trial claim with respect to any such action, except to the

25 extent that such defenses existed as of the date of defendant's

26 signing this agreement.

27         c.   Defendant agrees that: (i) any statements made by

28 defendant, under oath, at the guilty plea hearing (if such a hearing

occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

23.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services

Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

26.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

1

    27.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*/s/ Jeff Mitchell*                                      6/6/2023

JEFF MITCHELL                                       Date
Assistant United States Attorney

WILLIAM ERIC FULTON                       5-25-23
Defendant                                              Date

VICKI I. PODBERESKY                         5-26-23
Attorney for Defendant                       Date
William Eric Fulton


CERTIFICATION OF DEFENDANT

    I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

17

1  of entering into this agreement.  No promises, inducements, or

2  representations of any kind have been made to me other than those

3  contained in this agreement.  No one has threatened or forced me in

4  any way to enter into this agreement.  I am satisfied with the

5  representation of my attorney in this matter, and I am pleading

6  guilty because I am guilty of the charge and wish to take advantage

7  of the promises set forth in this agreement, and not for any other·

8  reason.

9  _____            ___5-25-23_____

10  WILLIAM ERIC FULTON                    Date
   Defendant

11

12

13

14

15               CERTIFICATION OF DEFENDANT'S ATTORNEY

16      I am William Eric Fulton's attorney.  I have carefully and

17  thoroughly discussed every part of this agreement with my client.

18  Further, I have fully advised my client of his rights, of possible

19  pretrial motions that might be filed, of possible defenses that might

20  be asserted either prior to or at trial, of the sentencing factors

21  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

22  provisions, and of the consequences of entering into this agreement.

23  To my knowledge: no promises, inducements, or representations of any

24  kind have been made to my client other than those contained in this

25  agreement; no one has threatened or forced my client in any way to

26  enter into this agreement; my client's decision to enter into this

27

28

                              18

agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

_____        5/26/23
VICKI I. PODBERESKY                Date
Attorney for Defendant
William Eric Fulton

EXHIBIT

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,           CR No. 2:23-cr-00284-SPG

11            Plaintiff,                 I N F O R M A T I O N

12            v.                         [18 U.S.C. § 1001(a)(2): Making
                                         False Statements]
13   WILLIAM ERIC FULTON,
       aka "Eric Fulton,"
14
              Defendant.
15

16        The United States Attorney charges:

17                     [18 U.S.C. § 1001(a)(2)]

18   A.   INTRODUCTIONARY ALLEGATIONS

19        At times relevant to this Information:

20        1.   Defendant WILLIAM ERIC FULTON, also known as "Eric Fulton,"

21   was an accounting professional and the founder of and senior partner

22   at a financial services company ("The Company").  The Company

23   provided bookkeeping, accounting, and tax preparation services to its

24   clients.

25

26

27

28

2.    The Department of Homeland Security, Homeland Security Investigations ("HSI") and the Internal Revenue Service – Criminal Investigation Division ("IRS-CI") in Los Angeles and the United States Attorney's Office ("USAO") for the Central District of California were conducting a criminal investigation into federal crimes, including illegal sports gambling and money laundering (the "Federal Investigation").

3.    The operation of a sports gambling business in California was prohibited by 18 U.S.C. § 1955 and California Penal Code § 337a.

<u>The Wayne Nix Illegal Sports Gambling Business</u>

4.    Wayne Nix was a resident of Orange County, California.  Nix was a minor league baseball player from 1995 to 2001.

5.    Sometime after 2001, Nix began operating an illegal bookmaking business in the Los Angeles area that accepted and paid off bets from bettors in California and elsewhere in the United States based on the outcomes of sporting events at agreed-upon odds (the "Nix Gambling Business").  Through contacts he had developed during his own career in professional sports, Nix created a client list that included current and former professional athletes and others.

6.    Nix used agents to place and accept bets from others for the Nix Gambling Business, including Agents 1 and 2.

7.   Sand Island Sports operated Internet sports gambling websites, including www.sandislandsports.com and www.betprestige.com (the "Sand Island Sports websites"), hosted on servers primarily located outside the United States.  The Sand Island Sports websites facilitated unlawful sports gambling by providing a platform to book makers to track bets placed by their clients.

8.   Nix provided bettors with account numbers and passwords for the Sand Island Sports websites and directed the bettors to use the Sand Island Sports websites to place bets with the Nix Gambling Business.

9.   Bettors would place bets online through the Sand Island Sports websites, and through Nix, Agent 1, Agent 2, and others working at Nix's direction.

Defendant Provided Financial Services to Nix's Gambling Business

10.   In approximately 2010, defendant FULTON met Nix and began providing financial services to Nix.  Defendant FULTON also provided financial services to Agents 1 and 2.

11.   Defendant FULTON and The Company provided bookkeeping and accounting services to Nix and Agent 1, including paying their bills and transferring money between accounts.

12.   Nix maintained a personal account and a business account with Wells Fargo Bank.  Nix used his Wells Fargo business account for the gambling business.  Defendant FULTON was an authorized signer for both accounts and prepared and signed checks for the accounts on Nix's behalf.

13. Beginning no later than 2011, defendant FULTON was aware that Nix ran an illegal gambling business. Defendant FULTON nonetheless knowingly laundered Nix's illicit gambling proceeds by continuing to provide financial services to Nix and providing access to the financial system. Defendant FULTON continued to transfer money between accounts, issued checks and wires to Nix's gambling clients who won large bets, and helped Nix obtain bank loans to facilitate the gambling business.

Defendant Fulton Provided Loans to the Nix Gambling Business

14. Defendant FULTON further participated in the gambling business by providing three personal loans to Nix totaling $1,250,000 to allow Nix to pay his gambling clients when Nix needed rapid access to liquid funds, which defendant FULTON agreed to provide at no cost to Nix. Defendant FULTON knew the purpose of all three loans was to allow Nix to pay his gambling clients.

Defendant FULTON's Use of the Nix Gambling Business

15. On November 12, 2016, defendant FULTON received a Sand Island Sports account from Nix. That same day, defendant FULTON placed 14 bets, including three bets on a professional match of a client of The Company.

Investigation into Wayne Nix

16. On October 8, 2021, defendant FULTON was interviewed in the presence of his attorney by HSI, IRS-CI, and the USAO in connection with the Federal Investigation and services provided by The Company to Nix. Defendant FULTON, through his counsel, requested that HSI not record the interview.

4

17.  At the beginning of the interview, a Special Agent from IRS-CI admonished defendant FULTON that lying to federal law enforcement agents was a crime, and defendant FULTON stated that he understood.

B.  FALSE STATEMENTS

18.  On or about October 8, 2021, in Los Angeles County, within the Central District of California, in an interview affecting the Federal Investigation in the Central District of California, and in a matter
within the jurisdiction of the executive branch of the government of the United States, namely, HSI, IRS-CI, and the USAO, defendant FULTON knowingly and willfully made materially false statements and representations to HSI, IRS-CI, and the USAO knowing that these statements and representations were untrue:

(a)  Defendant FULTON falsely stated that Nix was a consultant or concierge.  In fact, as defendant FULTON then knew, Nix ran an illegal bookmaking business, defendant FULTON had provided Nix several personal loans to allow Nix to pay his gambling clients, and defendant FULTON had referred at least one of his own clients to Nix for purposes of illegal gambling.

1              (b)   Defendant FULTON falsely stated that he had never

2     placed a bet online with Nix or Sand Island Sports.  In fact, as

3     defendant FULTON then knew, defendant FULTON had received an account

4     number from Nix and placed a series of bets online through Sand

5     Island Sports, including bets on a sporting event involving one of

6     defendant FULTON's clients.

7                                          E. MARTIN ESTRADA
                                           United States Attorney
8

9

10                                         MACK E. JENKINS
                                           Assistant United States Attorney
11                                         Chief, Criminal Division

12                                         RANEE A. KATZENSTEIN
                                           Assistant United States Attorney
13                                         Chief, Major Frauds Section

14                                         ALEXANDER B. SCHWAB
                                           Assistant United States Attorney
15                                         Deputy Chief, Major Frauds Section

16                                         JEFF MITCHELL
                                           Assistant United States Attorney
17                                         Major Frauds Section

18                                         DANIEL BOYLE
                                           Assistant United States Attorney
19                                         Asset Forfeiture & Recovery
                                           Section
20

21

22

23

24

25

26

27

28

                                    6