E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Environmental Crime and
Consumer Protection Section
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698/2426
     Facsimile: (213) 894-6269/0141
     E-mail:    jeff.mitchell@usdoj.gov
                daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-284-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING POSITION FOR DEFENDANT WILLIAM ERIC FULTON |
| v. | |
| WILLIAM ERIC FULTON, aka "Eric Fulton," | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Jeff Mitchell and
Dan G. Boyle, hereby files its Objections to the Presentence
Investigation Report and its Sentencing Position for defendant
William Eric Fulton ("Defendant").

//

//

These Objections and Sentencing Position are based upon the attached memorandum of points and authorities, defendant's Plea Agreement, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 20, 2024          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                      /s/
                                  DAN G. BOYLE
                                  JEFF MITCHELL
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     INTRODUCTION**

3  On July 25, 2023, defendant William Eric Fulton ("defendant")

4 pleaded guilty pursuant to a plea agreement to a single-count

5 Information charging defendant with Making False Statements, in

6 violation of 18 U.S.C. § 1001. See ECF Nos. 1, 7.

7  The United States Probation Office ("USPO") filed its

8 Presentence Investigation Report ("PSR") on October 18, 2023. See ECF

9 No. 21. The USPO calculated a total offense level of 21, based on a

10 base offense level of 26, a 2-level downward adjustment as a zero-

11 point offender, and a 3-level downward adjustment for acceptance of

12 responsibility. The USPO also calculated a criminal history score of

13 zero, corresponding to a criminal history category of I.

14  The USPO's calculations thus yielded an imprisonment range of

15 37-46 months under the United States Sentencing Guidelines

16 ("U.S.S.G." or the "Guidelines"). The USPO calculated a Guidelines

17 term of supervised release to be 1 to 3 years, a fine of $15,000 to

18 $150,000, and a mandatory special assessment of $100.

19  The government has three objections to the PSR: first, the PSR

20 incorrectly applies the money laundering guidelines set forth under

21 U.S.S.G. § 2S1.1(a)(2), but the PSR fails to recognize that defendant

22 participated in the underlying offense, and thus the guidelines

23 should be calculated based on such an offense pursuant to U.S.S.G.

24 § 2S1.1(a)(1). Here, the relevant guidelines for the gambling offense

25 detailed in the factual basis of defendant's Plea Agreement (the

26 "Factual Basis") would result in a base offense level of 12.

27  Second, the government submits that the PSR should include a

28 role adjustment pursuant to U.S.S.G. § 3B1.1(c), as defendant was the

founder and managing member of a 50-person business management firm which he put at the service of a criminal operation. As such, he qualifies for a two-level upward adjustment as an organizer, leader, manager, or supervisor.

Third, while the PSR was submitted prior to the November 1, 2023 revisions to the U.S.S.G., it applied § 4C1.1, commonly referred to at the zero-point-offender adjustment. The government submits that defendant does not qualify for the zero-point offender adjustment, because defendant should receive an adjustment under §3B1.1 for an aggravating role, and pursuant to § 4C1.1(a)(10), the zero-point-offender adjustment is not applicable where such a role adjustment is applied.

Based on the above objections, the government submits that defendant's proper total offense level should be 12, and with a criminal history category of I, this would result in a Guidelines imprisonment range of 10-16 months. Accordingly, the Government recommends a low-end sentence of 10 months in prison, three years of supervised release, a total fine of $673,290, and the mandatory $100 special assessment.

II. **STATEMENT OF FACTS**

The parties agreed to the following statement of facts in defendant's plea agreement:

The Department of Homeland Security, Homeland Security Investigations ("HSI") and the Internal Revenue Service – Criminal Investigation Division ("IRS-CI") in Los Angeles and the United States Attorney's Office ("USAO") for the Central District of California were conducting a federal criminal investigation into federal crimes, including illegal sports gambling and money

1  laundering (the "Federal Investigation").

2      Wayne Nix was a minor league baseball player from 1995 to 2001.

3  Sometime after 2001, Nix began operating an illegal bookmaking

4  business in the Los Angeles area that accepted and paid off bets from

5  bettors in California and elsewhere in the United States based on the

6  outcomes of sporting events at agreed-upon odds (the "Nix Gambling

7  Business"). Through contacts he had developed during his own career

8  in professional sports, Nix created a client list of current and

9  former professional athletes, and others. Nix used agents, including

10 Agents 1 and 2, to place and accept bets from others for the Nix

11 Gambling Business, thus expanding the business. As part of the Nix

12 Gambling Business, Nix and his agents used a website called Sand

13 Island Sports to create accounts through which wagers would be placed

14 and tracked.

15      Defendant was the founder and senior partner at a financial

16 services company ("The Company"). The Company provided bookkeeping,

17 accounting, and tax preparation services to its clients. Those

18 clients included Nix, Agent 1, and Agent 2. Specifically, The Company

19 provided bookkeeping and accounting services to Nix and Agent 1, in

20 which it paid their bills and transferred money between accounts.

21 Defendant also provided tax preparation services to Agent 2. Nix had

22 a personal and business account with Wells Fargo Bank. Nix used the

23 Wells Fargo business account, which was in the name "Nixy

24 Enterprises," for the gambling business. Defendant was an authorized

25 signer for both accounts and prepared and signed checks for the

26 accounts on Nix's behalf.

27      The Nixy Enterprises bank account lacked activity consistent

28 with a legitimate business. There were no typical business expenses

or income. Most of the bank activity came in the form of deposits and personal expenses such as car payments, travel, and food. Nix's gambling clients typically deposited cash and wired money directly to the Nixy Enterprises account. Nix's clients would also send personal checks and cashier's checks to Nix and/or The Company. The "Pay to the Order of" and memo lines of the personal checks were typically left blank, except for a player in the National Football League who wrote "investment" on the memo line of two checks.

Beginning no later than 2011, defendant was aware that Nix ran an illegal gambling business. Defendant nonetheless knowingly laundered Nix's illicit gambling proceeds by continuing to provide financial services to Nix and providing access to the financial system. Specifically, defendant continued to transfer money between accounts, issue checks and wires to Nix's gambling clients who won large bets, and helped Nix obtain bank loans to facilitate the gambling business. Between 2010 and 2020, defendant charged Nix approximately $336,645 in professional fees for his financial services.

In addition, defendant further participated in the gambling business by providing three personal loans to Nix totaling $1,250,000 to allow Nix to pay his gambling clients when Nix needed rapid access to liquid funds, which defendant agreed to provide at no cost to Nix. Specifically, On March 23, 2011, defendant wired $500,000 from his personal account at City National Bank to Nixy Enterprises. Next, on March 6, 2018, defendant wired Nix another $250,000. Three days later, The Company wired $250,000 from Nix's account to one of Nix's clients. Finally, on October 10, 2019, defendant sent a $500,000 wire from his personal account directly to another of Nix's gambling

clients. Defendant knew the purpose of all three loans was to allow Nix to pay his gambling clients.

Defendant also placed personal bets with Nix. For example, on November 12, 2016, Nix sent a text message to defendant and provided him the URL for the Sand Island Sports website. Defendant replied, "Thanks...what's my username." Nix replied, "R159." That same day, defendant placed 14 bets, including three bets on a professional match of a client of The Company.

In addition, defendant also referred at least one client of The Company to Nix for the purposes of illegal gambling. Specifically, on August 10, 2018, a client of The Company emailed defendant and asked for the name of defendant's "sports bookie." That same day, defendant sent Nix a text message and asked, "[a]re you taking on new clients[.] One of my celebrity clients needs your help but doubt he'll be a significant client." Defendant then provided Nix the name of his celebrity client, and Nix told defendant to provide Nix's name and phone number to the celebrity client.

On October 8, 2021, defendant was interviewed in the presence of his attorney by HSI, IRS-CI, and the USAO regarding the Federal Investigation. At the beginning of the interview, a Special Agent from IRS-CI admonished defendant that lying to federal law enforcement agents is a crime, and defendant stated that he understood. During the interview, defendant made several false statements to the agents that he knew were false and were material to the investigation. For example, defendant stated that he believed Nix was a consultant or concierge and denied all knowledge of Nix's involvement in Sports Gambling and the Sand Island Sports website. Defendant also stated that he had no knowledge that Nix was a

bookmaker until Nix called him and told him that law enforcement searched his home on February 7, 2020. Defendant also repeatedly stated that he never placed a bet with Nix. See Plea Agreement, at ¶ 9.

Based on this conduct, defendant agreed to plead guilty to an Information charging him with Making False Statements, in violation of 18 U.S.C. § 1001. See ECF Nos. 1, 7.

**III.   THE PRESENTENCE REPORT**

The USPO calculated defendant's adjusted offense level on Count One as 26, pursuant to the following calculation:

  Base Offense Level:           26      U.S.S.G. § 2S1.1(a)(2)

See PSR ¶¶ 44-47. After a three-point downward adjustment for acceptance of responsibility under USSG § 3E1.1(a), and a two-point downward adjustment as a zero-point offender pursuant to U.S.S.G. § 4C1.1, the USPO calculated defendant's total offense level as 21. See PSR ¶ 62.

**A.   Objection to PSR's Guidelines Calculation**

The government objects to the PSR's base offense level calculation. In the Plea Agreement, the parties stipulated to the application of the money laundering guidelines due to the nature of the admitted conduct. See Plea Agreement, ¶ 11. While the PSR correctly referred to the money laundering section of the Guidelines, the PSR incorrectly applied a base offense level inconsistent with the agreed-upon facts stated in the Plea Agreement.

Specifically, under U.S.S.G. § 2S1.1(a), the base offense level for a money laundering offense is calculated in one of two ways: if the defendant "committed the underlying offense (or would be

accountable for the underlying offense [as relevant conduct]" then subsection (a)(1) applies, and the base offense level is calculated based on the underlying conduct so long as the offense level for that offense can be determined. See U.S.S.G. § 2S1.1(a)(1). In contrast, if the defendant *could not* be held to account for the underlying conduct, then subsection (a)(2) applies, and the base offense level is "8 plus the number of offense levels from the table in §2B1.1". Here, the PSR calculated defendant's base offense level under subsection (a)(2). See PSR, ¶ 44. In doing so, the PSR failed to recognize that defendant was involved in the operation of the Nix Gambling Business, and thus subsection (a)(1) should apply. For example, the Plea Agreement included the following agreed upon facts:

- Defendant made payments to Nix's winning gambling clients;
- Defendant helped Nix obtain bank loans to facilitate the Nix Gambling Business;
- Defendant extended loans to Nix totaling at least $1,250,000 to allow Nix to pay winning clients of the Nix Gambling Business when he needed rapid access to funds;
- Defendant referred a new client to the Nix Gambling Business; and
- Defendant personally placed bets with the Nix Gambling Business.

See Plea Agreement, ¶ 9. In short, defendant and The Company knowingly operated as a de facto back office for the Nix Gambling Business, making payments, moving funds, extending financing, and conducting bookkeeping and administrative tasks that allowed the Nix Gambling Business to continue to operate.

18 U.S.C. § 1955 states that "[w]however *conducts*, *finances*, *manages*, supervises, directs, or owns all or part of an illegal gambling business shall be [punished according to law]" (emphasis added). Defendant's conduct, as admitted in the Plea Agreement, falls squarely within conducting, financing, and/or managing the Nix Gambling Business, or at the very least, pursuant to 18 U.S.C. § 2, he would be accountable for aiding and abetting Nix in the same. Based on these facts, the PSR should have calculated defendant's base offense level pursuant to U.S.S.G. § 2S1.1(a)(1) and thus applied the guidelines for gambling offenses under U.S.S.G. § 2E3.1. Had the PSR done so, and as detailed further herein, defendant's base offense level would be 12. See Plea Agreement, ¶ 11.

**B.    Objection to PSR's Role Enhancement Determinations**

The government also objects to the PSR's failure to include an aggravating role adjustment reflecting defendant and The Company's roles in the Nix Gambling Business.

Pursuant to U.S.S.G. § 3B1.1(c), a two-level upward adjustment is appropriate where a defendant "was an organizer, leader, manager, or supervisor in any criminal activity other than described [subsection a-b of the same section]." As stated in Application Note two to that section:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1, n.2. The Ninth Circuit has held that this adjustment may be applied where a defendant managed only a single

8

other participant. See United States v. Clark, 67 F.3d 309 (9th Cir. 1995) ("The adjustment requires that the defendant supervised or otherwise exercised control over other participants. Under U.S.S.G. § 3B1.1(c) a two point increase is appropriate even if only two participants are engaged in the crime."(internal citations omitted)); see also United States v. Doe, 778 F.3d 814, 818, 823-26 (9th Cir. 2015) (holding that a defendant was an organizer when he gave a buyer pricing information and a seller's contact information, but was not present for the transaction or hold supervisory role).

While the PSR does not include a role adjustment, the government submits that the PSR's findings and the Factual Basis of the Plea Agreement provide more than sufficient evidence for application of a two-level upward adjustment here. As discussed above, the agreed upon facts show that defendant played a key role in the Nix Gambling Business, both personally and through The Company. Defendant "exercised management responsibility over the property [and] assets" of the Nix Gambling Business, as he managed accounts holding the proceeds of the Nix Gambling Business, made payments for the Nix Gambling Business, and obtained credit for the Nix Gambling Business. In addition to defendant's personal conduct, defendant managed the Company in its role as a participant in facilitating the Nix Gambling Business. For example, defendant agreed in the Factual Basis the "[t]he Company provided bookkeeping and accounting services to Nix and Agent 1, in which it paid their bills and transferred money between accounts," that "Nix's clients would also send personal checks and cashier's checks to Nix and/or The Company," and that "[t]he Company wired $250,000 from Nix's account to one of Nix's clients" to help Nix pay a winning bettor. See Plea Agreement, ¶ 9.

9

The PSR provides further detail on the size and scope of the Company, confirming that defendant founded the Company, which provides bookkeeping, accounting, and tax preparation service, that it employs 50 people, and that defendant manages the Company as senior partner. See PSR, ¶¶ 23.

As another example, one former employee of the Company disclosed to investigating agents that, while employed at the Company as a business manager, defendant directed her to manage bookkeeping, bill pay and daily operations of accounts for Nix and the Nix Gambling Business. See Ex. A (filed under seal), ¶¶ 2-3, 10. Defendant dictated to this employee how Nix's accounts would be managed, and directed this employee to make payments for Nix. Id., ¶¶ 5, 19-20. At other times, defendant would direct this employee on how to book specific transactions in Nix's purported sports consulting income, which was in fact income from the Nix Gambling Business. Id., ¶ 21-22. The employee also noted that it was "common knowledge" at the Company that Nix was a bookie, and that the amount of money that the Company was managing for Nix did not make sense for sports consulting. Id., ¶¶ 11, 41.

In sum, defendant operated a 50-person financial services firm, which he put into service of Nix and his subagents to facilitate the Nix Gambling Business. In doing so, defendant acted as an organizer or manager of another participant in the criminal activity – i.e., The Company and its employees – and thus the application of a two-level upward adjustment under U.S.S.G. § 3B1.1(c) is appropriate.

**C.   Objection to Application of Zero-Point Offender Adjustment**

The PSR was filed on October 18, 2023. On November 1, 2023, the Guidelines were amended, including by adding a new section, § 4C1.1,

10

"Adjustment for Certain Zero-Point Offenders." Section 4C1.1 provides for a two-level downward adjudgment for certain defendants who have no criminal history points, subject to certain limitations detailed in § 4C1.1(a).[1] A defendant must meet "all" of the subsection (a) factors for § 4C1.1 to be applicable. Among these factors, subsection (a)(10) includes that the defendant "did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848."

Here, the PSR's failure to include a role adjustment under § 3B1.1 inaccurately led to the application of the zero-point offender adjustment. See PSR ¶ 60. As detailed above, however, the government submits that defendant should receive a role adjustment under § 3B1.1, and accordingly, the zero-point offender adjustment is inapplicable.

**D.  Criminal History Category and Advisory Guidelines Range**

Based on the above, the government respectfully submits that defendant's adjusted offense level on Count One is 14, pursuant to the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2S1.1(a)(2); U.S.S.G. § 2E3.1(a)(2) |
| Role Adj.: Manager | +2 | U.S.S.G. § 3B1.1(c) |

After a two-point downward adjustment for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a), defendant's total offense level is 12. With a criminal history category of I, this yields an Guideline range of 10-16 months' imprisonment.

---

[1] On August 24, 2023, the Sentencing Commission announced that § 4C1.1 would be retroactive as of February 1, 2024.

11

**IV.  GOVERNMENT'S SENTENCING POSITION**

As detailed above, the government submits that defendant's total offense level should be 12, with a criminal history category of 1. Accordingly, the government recommends a low-end sentence of 10 months imprisonment, three years of supervised release, and the mandatory $100 special assessment. The parties have also stipulated that defendant shall pay a fine of $673,290. Such a sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a), and no greater than necessary to comply with the factors set forth therein.

Defendant's offenses are serious and merit a serious sentence. Defendant admitted to lying to federal agents about a multi-year course of illegal conduct where he provided services facilitating the operation of Nix's unlawful gambling enterprise. Defendant not only provided critical business management and accounting services to Nix while turning a blind eye to widespread illegal conduct, but defendant actively supported Nix's illegal business by providing loans to Nix when winning bettors had to be paid. In doing so, defendant effectively acted as a lender of last resort for an illegal business which likely could not otherwise obtain financing.

Defendant is an accountant and financial manager. In essence, he was a gateway to the financial industry. Defendant ignored his responsibilities and knowingly allowed Nix's illicit money to enter the financial system. Fairly considered, the admitted facts establish that Nix's illegal operations would not have existed for as long or at the scope it did without defendant's assistance. This conduct is exacerbated by the fact that, when federal agents questioned defendant about Nix, defendant lied and attempted to cover for Nix, claiming that defendant believed Nix was merely a consultant or

concierge – when defendant knew Nix ran an illegal gambling operation and defendant had even placed bets with Nix. As such, a sentence of incarceration, even if at the low-end of the range, reflects the seriousness of the offense and sends and equally-serious message of deterrence pursuant to 18 U.S.C. § 3553(a)(2)(A-B).

While the government believes defendant's conduct was serious, the government recognizes mitigating factors here. Indeed, a low-end sentence is justified here by defendant's lack of prior criminal history, acceptance of responsibility, and willingness to plead guilty pre-indictment and pay a substantial fine – effectively disgorging the profits made off of Nix. A low-end sentence is thus no greater than necessary to address the considerations set forth in 18 U.S.C. § 3553(a).

Dated: February 20, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

                                 ___/s/_____
                                 DAN G. BOYLE
                                 JEFF MITCHELL
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

DECLARATION OF DAN G. BOYLE

I, DAN G. BOYLE, hereby declare and state as follows:

I have personal knowledge of the following facts and, if called as a witness, would testify thereto under oath.

1.   I am an Assistant United States Attorney in the United States Attorneys' Office for the Central District of California. I am counsel for the government in this action.

2.   Attached as Exhibit A is a true and correct copy of is a copy of a memorandum of interview in this investigation dated January 14, 2022. This Exhibit is being filed under seal for the reasoned stated in the government's concurrently-filed Ex Parte Application to Seal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 20, 2024 in Los Angeles, California.

_____/s/_____

DAN G. BOYLE

14